UNITED STATES DISTRICT COURT

for the

EASTERN DISTRICT OF VIRGINIA

F I L E D
FEB 11 2013
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

Marnie Titsch )
   Plaintiff )
)
vs )
) Civil Action 3:12CV791
CONSUMER CASH REWARDS, LLC )
W. ALAN TRUESDALE )
LEISURE BAY INDUSTRIES, INC. )
   Defendants )

ANWER OF W. ALAN TRUESDALE

Comes now the defendant W. Alan Truesdale, pro se, and, in answer to the complaint filed against him, alleges the following in his defense and/or against Plaintiff, as the case may be.

1. In response to the Plaintiff's "Introduction", paragraph 1: Plaintiff's allegations are denied. Defendant Truesdale has no continuing association with Defendant Consumer Cash Rewards, Inc., of any kind, and Consumer Cash Rewards has conducted no business in years, has no assets or income and is, by all measure, insolvent. Further, on knowledge and belief, the "marketing promotion" to which Plaintiff refers was not a "gimmick, as Plaintiff alleges. Indeed, it was established and administered according to an actuarial opinion issues by an experienced and competent third-part actuarial firm, the conclusions of which were that it was reasonable to expect, based on the best information available, that the promotion would pay the face amount of the "Cash Reward Certificate" issued to consumers who properly and timely submitted claims. This conclusion was based on the well-know and universally accepted concept of *breakage*, meaning that the expectation was, again based on the best available evidence, that significantly less than all Certificate holders would file a claim, or, if they did so, would do so in a timely and otherwise proper manner. In any event, each certificate, stated as follows:

1

> *How much cash you may receive: If the person to whom this Certificate was issued (you) validly registers this Certificate and then validly redeems it 39 months later in accordance with the terms and conditions of this Certificate, you will receive up to [the] Maximum Amount shown above **[the face amount of the Certificate]**. A portion of the Maximum Amount of all Certificates issued in the same calendar month will be held in escrow (a Monthly Claim Fund). Each Monthly Claim Fund will be divided among the holders of Certificates issues that month that are validly registered and redeemed. These holders are referred to as "Claimants"). Certificate Holders who do not validly register and redeem their Certificates will receive no payment, and money they could have received will be available to pay Claimants.*
>
> *Based on its statistical analysis, Consumer Cash Rewards LLC ("CCR") estimates that all Claimants will receive the Maximum Amount of their Certificates. However, the actual payment for each Monthly Claim Fund will depend on the amount of Certificates validly redeemed for that month. If the Monthly Claim Fund equals or exceeds the Maximum Amount for all Claimants for that month, they will receive 100% of their Maximum Amount. If the Monthly Claim Fund is not sufficient to pay 100%, Claimants will receive a share proportionate to there Maximum Amount. Each Claimant will receive not less than 15% of their Maximum Amount.*
>
> *This Certificate contains the entire agreement between you and CCR concerning the Consumer Cash Rewards Program (Program). Any statement made in connection with the Program is of no effect, unless expressly made in this Certificate.*

2. Further in response to the Plaintiff's "Introduction", paragraph 1: Plaintiff's allegations are denied by reason of the fact that no "promises" were made as to a "significant cash reward", as the text quoted above clearly indicates.

3. Also in response to the Plaintiff's "Introduction", paragraph 1: Plaintiff's allegation that "defendants in fact did not intend to make such a [significant] payment is denied, and Plaintiff is left to her proof. Indeed, as indicated in the foregoing, quite the contrary was intended, as the information quoted above clearly indicates.

4. Further in response to the Plaintiff's "Introduction", paragraph 1: Plaintiff's allegations are denied insofar as they allege any party known to Defendant Truesdale "constructed" a series of "delays" and "technical obstacles" to making full and timely payment, as further explained below. The Plaintiff is left to her proof.

5. In response to the Plaintiff's "Jurisdiction", paragraph 2: Plaintiff's allegations are denied. Defendant Truesdale has no knowledge of how many Cash Rewards Certificates were issued in in the Commonwealth of Virginia or the average amount of each, or any such, certificate or the portion thereof that were issued in the Commonwealth. In the affirmative, Defendant Truesdale alleges that Plaintiff and her counsel have no basis in fact as to such allegations, and, consequently, are misleading this Court in so alleging. The Plaintiff is left to her proof.

6. In response to the Plaintiff's "Parties", paragraph 3: Defendant Truesdale has no knowledge or belief and leaves Plaintiff to her proof.

7. In response to the Plaintiff's "Parties", paragraph 4: Defendant Truesdale has no reliable knowledge or belief and leaves Plaintiff to her proof. Defendant Truesdale further alleges that no foundation has been laid by Plaintiff for the inclusion of information concerning "Rec Warehouse", which is not a Defendant in this case.

8. In response to the Plaintiff's "Parties", paragraph 5: Defendant Truesdale, on knowledge and belief, admits that Consumer Cash Rewards, Inc., was organized as a Georgia limited liability company. He further alleges that, on knowledge and belief, Consumer Cash Rewards, Inc., has conducted no business in the State of Georgia or the Commonwealth of Virginia, or any other state, for years, maintains no office or mailing address and, as noted above, is insolvent.

9. Also in response to the Plaintiff's "Parties", paragraph 5: Defendant Truesdale alleges that, to the best of his knowledge and belief, Defendant Leisure Bay is no longer in business and cannot be located by Defendant Truesdale. Truesdale has no knowledge or belief as to the whereabouts, if any, of Rec Warehouse" or to the present state of its affairs.

10. In response to the Plaintiff's "Parties", paragraph 5: Defendant Truesdale denies that Defendant Cash Rewards, Inc. operates a Website.

11. In response the Plaintiff's "Parties", paragraph 6: Defendant Truesdale also denies Cash Rewards was his "alter ego", at any time, or to any extent. Truesdale was, at one time, a 1% shareholder and executive officer but engaged in no conduct warranting that allegation.

12. Further in response to he Plaintiff's "Parties", paragraph 6: Defendant Truesdale alleges that Defendant lacks any evidence, indeed any basis in fact whatever, and no knowledge of any information on which any reasonable party could infer, or even suspect, that Cash Rewards, Inc., was his "alter ego". In this manner, Plaintiff is actively misleading the court to allege as she does, knowing that the allegation has no basis in fact.

13. In response the Plaintiff's "Parties", paragraph 6: Defendant Truesdale denies Plaintiff's allegation as to his role at Consumer Cash Rewards, Inc., and further denies that any fraud or deception was committed. Defendant Truesdale further denies that the capitalization of Consumer Cash Rewards is pertinent to this case, inasmuch as the latter was not corporately financially liable for the payment of claims. Rather, retailer fee payments were placed in escrow with a third party, which was the sole source for payment of consumer claims. In this regards, Defendant Truesdale calls Plaintiff's attention to the quoted text in paragraph 1, above.

14. In response the Plaintiff's "Parties", paragraph 7: Defendant Truesdale further asserts that funds used to pay Leisure Bay consumer's claims under their Cash Rewards were Leisure Bay funds, not funds drawn from the collective pool of retailer fees paid into the escrowed funds referred to above (the "Claim Fund"). This is by reason of the fact that Leisure Bay breached its contract with consumers and Defendant Consumer Cash Rewards when it failed, until threatened by Consumer Cash Rewards with legal action, to pay the agreed fees that, had such fees been timely paid, would have been placed in the Claim Fund. As a consequence, since Leisure Bay made final payment only well after other consumers of other retailers were paid for the periods during which Leisure Bay issued certificates were issued and later were to be redeemed. Only Leisure Bay monies, not the escrowed "Claim Fund", was used to pay Leisure Bay consumers. Furthermore, of necessity, Leisure Bay funds were used to determine the payout percentage of Leisure Bay Cash Rewards certificates. See Exhibit A. Accordingly, there is no "class" to which Plaintiff arguably is a member, except as the Court may determine as to Leisure Bay Rec Warehouse customers, not all consumers who received Cash Rewards

15. In response the Plaintiff's "Facts", paragraph 8: Defendant Truesdale has no knowledge or belief as to what Plaintiff purchased from Rec Warehouse or of the relationship, legal or otherwise, between Rec Warehouse and Defendant Leisure Bay and leaves Plaintiff to her proof.

16. In response the Plaintiff's "Facts", paragraph 9: Defendant Truesdale denies that he was a "contracting party" with any persons, at any time, to any extent, on any subject, in connection with the Cash Rewards marketing promotion. Defendant, on knowledge and belief, admits that Plaintiff was a "contracting party" with Defendants Leisure Bay and Consumer Cash Rewards. On knowledge and belief, inasmuch as the Cash Reward program was a marketing promotion, Defendant concedes that one could reasonably conclude that Plaintiff was an intended beneficiary of the promotion in which she participated.

17. In response the Plaintiff's "Facts", paragraph 10: On knowledge and belief, Defendant Truesdale believes the allegations of Plaintiff to be true. However, this admission is qualified by the foregoing and the attached materials at Exhibit A, by means of which a check was remitted to Plaintiff in respect of the Cash Rewards program. Defendant, to his best knowledge and belief, cannot confirm the final disposition of that check, other than his belief that it was mailed to the Plaintiff.

18. In response the Plaintiff's "Facts", paragraph 11: Defendant Truesdale denies Plaintiff's allegation and, in that regard, calls Plaintiffs attention to the attached Exhibit A and leaves Plaintiff to her proof.

19. In response the Plaintiff's "Facts", paragraph 12: Defendant Truesdale denies Plaintiff's allegation, for the reason cited above and leaves Plaintiff to her proof.

20. Further in response the Plaintiff's "Facts", paragraph 12: Defendant Truesdale denies Plaintiff's allegation as to other facts stated thereon and leaves Plaintiff to her proof

21. In response the Plaintiff's "Facts", paragraph 13: Defendant Truesdale denies Plaintiff's allegation and leaves Plaintiff to her proof

22. In response the Plaintiff's "Class Action Allegations", paragraph 15: Defendant denies Plaintiffs claim by reason of the fact that, if Plaintiff is a member of a "class" under applicable law, she is a member of a class comprised solely of Leisure Bay (or Rec Warehouse, as the case may be) customers, inasmuch as these consumers were paid solely from Leisure Bay funds, by reason of Leisure Bays breach more particularly described at paragraph 14, above, as further described at Exhibit A.

23. In response the Plaintiff's "Class Action Allegations", paragraph 16: Defendant Truesdale denies Plaintiff's allegation and leaves Plaintiff to her proof

24. In response the Plaintiff's "Class Action Allegations", paragraph 17: Defendant Truesdale has no knowledge or information and, on that basis, denies, the allegation and leaves Plaintiff to her proof.

25. In response the Plaintiff's "Class Action Allegations", paragraph 18: Defendant Truesdale denies Plaintiff's allegation, except insofar as it pertains to potential questions of fact or law related to Leisure Bay customers issued Cash Rewards certificates, by reason of the facts cited in paragraph 14, above and described in some further detail at Exhibit A

26. In response the Plaintiff's "Class Action Allegations", paragraph 19: Defendant Truesdale has no knowledge or information and, on that basis, denies, the allegation and leaves Plaintiff to her proof.

27. In response the Plaintiff's "Class Action Allegations", paragraph 20: Defendant Truesdale has no knowledge or information and, on that basis, denies, the allegation and leaves Plaintiff to her proof.

28. In response the Plaintiff's "Class Action Allegations", paragraph 21: Defendant Truesdale has no knowledge or information and, on that basis, denies, the allegation and leaves Plaintiff to her proof.

29. In response the Plaintiff's "Count One: Breach of Contract", paragraph 22: Defendant Truesdale denies Plaintiff's allegations and leaves Plaintiff to her proof

30. In response the Plaintiff's "Count One: Breach of Contract", paragraph 23: Defendant Truesdale denies Plaintiff's allegations and eaves Plaintiff to her proof.

31. In response the Plaintiff's "Count One: Breach of Contract", paragraph 24: Defendant Truesdale denies Plaintiff's allegations ad leaves Plaintiff to her proof.

32. Defendant Truesdale requests that Plaintiff's motion for default for failure to answer be denied, for reasons more particularly described in the accompanying affidavit.

33. Defendant Truesdale asserts that he is insolvent.


W. Alan Truesdale, pro se


_____

W. Alan Truesdale
11120 Linbrook Lane
Johns Creek, Georgia 30097

## EXHIBIT A
(5 pages)

These documents were culled from an incomplete list of documents in Defendant Truesdale's computer records, which are incomplete, inasmuch as he no longer is associated with Consumer Cash Rewards, Inc., and the latter conducts no business, maintains no mailing or office address and is insolvent. Records also are incomplete inasmuch as a significant portion of those once available to Defendant Truesdale were lost by reason of a computer *crash* related to a damaged hard drive and, in some cases, by the inadvertent loss of data by reason of a faulty backup procedure. Be that as it may, Defendant Truesdale believes that these are verbatim copies of the documents, if requiring a signature but here unsigned, and he represents that the two-page letter and the end of the attached five-page enclosure is the letter sent to Leisure Bay consumers who submitted successful claims, including Plaintiff.

7

AERO LETTERHEAD

December 23, 2008

Leisure Bay Industries, Inc.
d/b/a RecWarehouse
Orlando, Florida

Attention:   Mr. Joseph Hurt
             Vice President, Corporate Resources

Re: Cash Rewards

Ladies & Gentlemen:

Aero Fulfillment Services has contracted with Consumer Cash Systems LLC to serve as the independent, impartial *Administrator* of the Cash Rewards promotion in which Leisure Bay Industries.

We are a *independent*, because we are not an affiliate or subsidiary of or otherwise controlled by Consumer Cash Systems, who designed this promotion, or by any of the retail firms (*sponsors*) who issued Cash Rewards Certificates to their customers.

We are *impartial*, because, while we receive a fee and expenses for our services, we do not benefit, if a Cash Reward claim is denied, or bear are burden, if it is approved. This allows us to administer our component of the promotion fairly and impartially, in accordance with its terms and conditions, with no conflict of interest.

As the Administrator, we alone receive, review and determine the validity of Cash Rewards claims. We also are the sole signatory on the *Claim Fund*, an escrow held by U.S. Bank wherein has been deposited, at the time each Certificate is issued, a portion of the sponsor fee deemed by an independent actuarial at the commencement of the promotion to be appropriate to the intended purpose.

The sponsor fees set aside in this fashion for each accounting period (in your case, a calendar month) are held for the benefit of valid claimants whose Certificate was issued in that period. Payments for each accounting period are made, *pro rata*, among valid claimants, to the extent of the fees in escrow for that period, up to the face amount of the valid Certificates for that period.

Our database reflects that 6 RecWarehouse stores participated in the Cash Reward promotion, that the last Certificate of which we have a record was issued September 05, 2005 and that 283 of your customers were issued a total of $265,550.00 in Cash Rewards Certificates.

We also have been advised by Consumer Cash System that you paid, and you have acknowledged that you paid $18,870.25 in sponsor fees and that, for the total Certificates issued of $143,806.45, for which a total fee of 15.5% of the face amount was payable, sponsor fees of $22,290.00 remain to be paid. This sum includes the one Certificate (J807548, for $250.00) you recently acknowledged as inadvertently never reported or paid. In turn, this sum does not include 7 Certificate your customers filed with us but you recently reported as having been canceled by you, for which, therefore, no fee would be payable. To this sum, $146.25 was added to reimburse the Claim Fund for the direct cost of the data management firm relating to work performed by reason of this late payment. This brings the total payable by Leisure Bay Industries to **$22,436.25**.

Please remit a check for the amount of **$22,436.25**, drawn to the order of *Claim Fund – USBank*. This check should be mailed (or, hopefully, sent by overnight courier) to Ms. Carrie Barrick, Aero Fulfillment, 3900 Aero Drive, Mason, Ohio, 45040.

Ms. Barrick will cause this check to be deposited promptly to the Claim Fund at USBank, to the account to which all such deposits are intended to be made by all sponsors.

If you would like to remit payment by federal wire, we can provide the necessary information.

We will acknowledge receipt and deposit of your check by notice to you at JHurt@leisurebay.com. By agreement with Consumer Cash Systems, and with its and our assent, this will constitute payment in full of fees payable with respect of the Certificates you issued, subject to collection.

Upon receipt of available funds, we will cause claim checks to be issued to those of your customers who filed valid claims under the terms and conditions of the promotion, as determined by us, in the same manner all prior claims were determined. These amount of the claim checks will be calculated by a third party data management firm on which we consistently have relied, a firm that is independent of Consumer Cash Systems and sponsors and that has no financial interest in whether claims are valid or invalid.

Our <u>determination of the validity of a claim</u> involves the exercise of our judgment, based on the terms and conditions of the Certificate and the information filed with us by each claimant. On the other hand, the <u>calculation of amount of the check</u> for each valid claimant is a purely mathematical process based on an immutable equation involving the face amount of all Certificates validly claimed for an accounting period during which those valid Certificates were issued and the funds held in escrow for the accounting period.

We estimate checks can be mailed to your customers within 7-10 business days of our receipt of your payment. Every reasonable effort will be made by us and CCS to mail these checks as soon as is administratively possible. Upon mailing, you will be notified of this (at the Email address listed above) and provided a list of the names and addresses of all claimants and the sums paid.

We also acknowledge, and have been authorized by Consumer Cash Systems to acknowledge, that, in any communication with your customers concerning this matter, the delay in payment of your sponsor fees, and the resultant delay in payment of claims to your customers, properly will be characterized as a *good faith misunderstanding* of the fees payable by you concerning this matter, and it properly will be said that all such fees have been paid full, with the full cooperation of RecWarehouse.

Please fax us a signed copy of this letter at (513) 459-3950. We will provide you with a counterpart signed by Consumer Cash Systems LLC.

Very truly yours,


Charlotte Eynon
National Account Manager

**ACCEPTED AND AGREED TO AS OF
THE DATE FIRST ABOVE WRITTEN**

**LEISURE BAY INDUSTRIES, INC.**


By _____
    Joseph Hurt,
    Duly authorized

**CONSUMER CASH SYSTEMS LLC**


By _____
    W. Alan Truesdale,
    Duly authorized

**NARRATIVE EXPLANATION - CASH REWARDS PAYOUT PERCENTAGE**
**Accounting Period: Month of August 2004**
**Recreation Factory Warehouse**
**Payout Percentage: 21.00%**
**Series J Certificate**

1. <u>The Cash Rewards system has worked precisely as intended & as disclosed to & agreed by the consumer</u>. Your Certificate states:

   *How much cash you may receive: If the person to whom this Certificate was issued (you) validly registers this Certificate and then validly redeems it 39 months later in accordance with the terms and conditions of this Certificate, you will receive up to [the] Maximum Amount shown above [the face amount of the Certificate]. A portion of the Maximum Amount of all Certificates issued in the same calendar month will be held in escrow (a Monthly Claim Fund). Each Monthly Claim Fund will be divided among the holders of Certificates issues that month that are validly registered and redeemed. These holders are referred to as "Claimants"). Certificate Holders who do not validly register and redeem their Certificates will receive no payment, and money they could ave received will be available to pay Claimants.*

   *Based on its statistical analysis, Consumer Cash Rewards LLC ("CCR") estimates that all Claimants will receive the Maximum Amount of their Certificates. However, the actual payment for each Monthly Claim Fund will depend on the amount of Certificates validly redeemed for that month. If the Monthly Claim Fund equals or exceeds the Maximum Amount for all Claimants for that month, they will receive 100% of their Maximum Amount. If the Monthly Claim Fund is not sufficient to pay 100%, Claimants will receive a share proportionate to their Maximum Amount. Each Claimant will receive not less than 15% of their Maximum Amount.*

   *This Certificate contains the entire agreement between you and CCR concerning the Consumer Cash Rewards Program (Program). Any statement made in connection with the Program is of no effect, unless expressly made in this Certificate. The Monthly Claim Fund is held in an escrow account at U.S. Bank (the bank), ...... the 8th largest American bank ....*

2. <u>Statistical variations among accounting periods</u>. Earlier stages of the promotion used weekly accounting periods. Beginning in late 2003, with the Series G & H Certificates, monthly accounting periods were used. During any accounting period, valid claims inevitably will be higher (or lower) than in other periods. We have had percentages near the stated expected minimum of 15% and others as high as 100%. For example, recently, we experienced these percentages for the accounting periods specified.

   | Monthly 02/04 20.58% | Monthly 03/04 20.58% | Monthly 04/04 22.87% | Monthly 05/04 23.99% |
   |---|---|---|---|
   | Monthly 06/04 18.56% | Monthly 07/04 16.92% | | |

   An accounting "month" is a calendar month. Payments from the Claim Fund escrow for the specified period cover all certificates issued in that period and validly claimed. Your accounting period is shown at the top of this page. The payment percentage for that month also is shown at the top of the page.

3. <u>The delay in receiving your check</u>. Recreation Factory Warehouse, Consumer Cash Rewards and the Administrator join in expressing dismay at the unfortunate but necessary delay in your claim check. This resulted from a good faith misunderstanding between RecWarehouse and Consumer Cash Rewards concerning fees paid and payable by the former. As noted above, a consistent portion of the fees paid for Certificates issued in each accounting period is set aside for the payment of valid claims for that period.

At the early stages of RecWarehouse's involvement with this promotion, Consumer Cash Rewards inadvertently credited RecWarehouse with payment of the significant, initial installment of the fees due for the promotion, when, in fact, payment had not yet been made. By a stunning and unfortunate coincidence, RecWarehouse (independently of Consumer Cash Rewards) also was of the opinion it had paid this initial fee. When, much later, it was discovered by both firms that the required fees had not been paid, an immediate effort was initiated to resolve the issue. The issue has now been fully resolved and RecWarehouse has paid the fees.

## CEERTIFICATE OF SERVICE

Defendant Truesdale hereby certifies that he mailed a copy of this Answer, including the exhibits and the above-referenced affidavit, to Plaintiff's counsel at the address provided by counsel in the Complaint. Defendant cannot mail a copy of this Answer to Defendant Consumer Cash Rewards Inc., because it maintains no mailing or office address, is not engaged in the conduct of business and is insolvent. Defendant Truesdale, after diligent inquiry, has failed to located Defendant Leisure Bay and as stated above, on knowledge ad belief, is of the opinion that the firm is no longer in business and, presumably, insolvent.

*[signature]*

8

UNITED STATES DISTRICT COURT

for the

EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Marnie Titsch )<br>   Plaintiff )<br> )<br>vs )<br> )<br>CONSUMER CASH REWARDS, LLC )<br>W. ALAN TRUESDALE )<br>LEISURE BAY INDUSTRIES, INC. )<br>   Defendants ) | Civil Action 3:12CV791 |

### DEFENDANT W. ALAN TRUESDALE'S APPEARANCE

Defendant Truesdale hereby files his appearance, pro se, in connection with this matter

_W Alan Truesdale_
W Alan Truesdale
11120 Linbrook Lane
Johns Creek, Georgia 30097
678.327.1424

1

UNITED STATES DISTRICT COURT

for the

EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Marnie Titsch )<br>   Plaintiff )<br> )<br>vs )<br> )<br>CONSUMER CASH REWARDS, LLC )<br>W. ALAN TRUESDALE )<br>LEISURE BAY INDUSTRIES, INC. )<br>   Defendants ) | Civil Action 3:12CV791 |

DEFENDANT W. ALAN TRUESDALE'S SWORN STATEMENT

1. Defendant Truesdale's delay in this matter was caused unavoidably by the numerous life-threatening physical illnesses of Defendant Truesdale's wife, which began in 2011 and are accelerating in occurrence and increasing in number, to this day, and the attendant need to provide her personal care and to devote significant time transporting her, and attending with her at, countless visits to physicians offices, hospital emergency rooms and medical clinics.

2. Defendant Truesdale is willing, upon request, to document, through physician letters, the severe illnesses referred to above.

3. Defendant Truesdale begs this court's indulgence for this delay, inasmuch as Defendant Truesdale believes he had no reasonable choice but to care for his wife in the manner, and to the extent, required, and, further, inasmuch, while Plaintiff may have been inconvenienced by this delay, it was not harmed thereby.

_____
W Alan Truesdale

Subscribed and sworn to by W. Alan Truesdale, before me, a notary pubic in and for the County of Fulton and State of Georgia this 8TH day of February 2013.

DOUGLAS NOVO
Notary Public, Fulton County, Georgia
My Commission Expires December 7, 2014